UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-61621-Civ-MORENO
MAGISTRATE JUDGE P. A. WHITE

JAMES WELLS,                          :

       Petitioner,        :

v.                                    :        REPORT OF
                                               MAGISTRATE JUDGE
WALTER A. McNEIL,[1]                  :

       Respondent.        :
_____

Introduction

    James Wells has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, challenging the constitutionality of his conviction for lewd or lascivious molestation of a child less than twelve years of age entered following a jury verdict in Broward County Circuit Court, case no. 01-7470CF10A.

    This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

    For its consideration of this petition (DE#1) with supporting exhibits, the Court has the response of the state to an order to show cause with multiple exhibits (DE#s7-8), and the petitioner's reply (DE#10).

_____

[1]Walter A. McNeil, has replaced James R. McDonough as Secretary of the Florida Department of Corrections, and is now the proper respondent in this proceeding. McNeil should, therefore, "automatically" be substituted as a party under Federal Rule of Civil Procedure 25(d)(1). The Clerk is directed to docket and change the designation of the Respondent.

The petitioner raises the following five claims:

1.  The court erred in allowing the admission of irrelevant, highly inflammatory evidence to show bad character, contrary to <u>Fla.Stat.</u> §90.404 and federal law. (DE#1:6).

2.  He was denied effective assistance of counsel, where his lawyer waived his speedy trial rights without the petitioner's consent. (DE#1:8).

3.  He was denied effective assistance of counsel, where his lawyer failed to challenge the competency of the minor victim to testify at trial. (DE#1:9).

4.  He was denied effective assistance of counsel, where his lawyer failed to call an eye witness to refute the testimony of the prosecution's witness, Wendy Payne. (DE#1:11).

5.  He was denied effective assistance of counsel, where his lawyer failed to properly impeach the prosecution's witness, Wendy Payne, with her motive and interest for providing untruthful testimony. (DE#1:12A).

<u>Procedural History</u>

The procedural history of the underlying state court conviction reveals as follows. The petitioner was charged by Amended Information with the February 6, 2001, lewd or lascivious molestation of Shavon Andrews ("S.A."), a child less than twelve years of age (Count 1), and the lewd or lascivious molestation of Shavon Andrews, a child less than twelve years of age, beginning on November 1, 2000 through and including February 5, 2001 (Count 2). (DE#8:Ex.A2). He proceeded to trial, where he was acquitted as to

Count 2, and found guilty as to Count 1, following a jury verdict. (DE#8:Ex.A4). Thereafter, he was adjudicated guilty and sentenced to a term of 17 years in prison. (DE#8:Ex.A1).

The petitioner appealed, raising the same claim as claim one of this federal petition, as listed above. (DE#8:Ex.A5). On November 3, 2004, the Fourth District Court of Appeal *per curiam* affirmed the petitioner's conviction without published opinion. Wells v. State, 886 So.2d 240 (Fla. 4 DCA 2004)(table); (DE#8:Ex.A8). Thus, the judgment of conviction became final, for purposes of the AEDPA's one year statute of limitations, at the latest on February 3, 2005, ninety days following the affirmance of the conviction and sentence on direct appeal.[2]

Prior to his conviction becoming final, the petitioner returned to the state court filing a motion to modify or reduce his sentence, which was denied by the trial court on January 5, 2005. (DE#8:Exs:A10-A11). No direct appeal appears to have been filed therefrom.

The federal limitations period ran unchecked for over five months, from February 3, 2005, when the petitioner's conviction became final, until July 17, 2005, when the petitioner next filed a state habeas corpus petition. (DE#8:Ex.:A12). The petition was denied, and rehearing and clarification were denied on January 6, 2006. (DE#8:Exs.:A16-A18). Discretionary review was denied by the Florida Supreme Court on February 8, 2006. Wells v. State, 924 So.2d 812 (Fla. 2006). (DE#8:Ex.:A20).

---

[2]For federal purposes, a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); accord, Bond v. Moore, 309 F.3d 770 (11 Cir. 2002); Coates v. Byrd, 211 F.3d 1225 (11 Cir. 2000). Ordinarily, a petition for writ of certiorari must be filed within 90 days of the date of the entry of judgment, rather than the issuance of a mandate. Supreme Court Rule 13.

The limitations period once again ran unchecked for over four months, from February 8, 2006 until June 21, 2006, when the petitioner returned to the state court, filing his first Rule 3.850 motion for postconviction relief, raising multiple claims, including claims two through five of this federal petition, as listed above. (DE#8:Ex.:A21). After receipt of the state's response thereto (DE#8:Ex.:A22), the trial court adopted the response, and entered an order denying the claims on the merits. (DE#8:Ex.:A23). On September 6, 2007, the petitioner filed a reply to the state's response (DE#8:Ex.:A24). The trial court construed the reply as a motion for rehearing, and on September 17, 2007, denied the petitioner's motion. (DE#8:Ex.:A25). The trial court's denial of the Rule 3.850 motion was subsequently *per curiam* affirmed in an unpublished opinion, without requiring a response from the state. Wells v. State, 988 So.2d 634 (Fla. 4 DCA 2008)(table); (DE#8:Ex.:A26). Rehearing was denied and the mandate issued on September 28, 2008. (DE#8:Exs.:A28-A29).

Less than one week of untolled time expired thereafter until the petitioner then came to this court timely filing this federal habeas corpus petition on October 5, 2008.[3] (DE#1). Petitioner filed his timely petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action. Abdul-Kabir v. Quarterman, 550 U.S. 233, 127 S.Ct. 1654, 1664, 167 L.Ed.2d 585 (2007); Penry v. Johnson, 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n .9 (11 Cir. 2007). The respondent concedes correctly that this petition was filed within the one-year limitations period of 28 U.S.C. §2244, as amended by the

---

[3] See: Adams v. United States, 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

Antiterrorism and Effective Death Penalty Act of 1996, <u>Artuz v. Bennett</u>, 531 U.S. 4 (2000) (pendency of properly-filed state postconviction proceedings tolls the AEDPA limitations period).

It is axiomatic that issues raised in a federal habeas corpus petition must have been fairly presented to the state courts and thereby exhausted prior to their consideration on the merits. <u>Anderson v. Harless</u>, 459 U.S. 4 (1982); <u>Hutchins v. Wainwright</u>, 715 F.2d 512 (11 Cir. 1983). Exhaustion requires that a claim be pursued in the state courts through the appellate process. <u>Leonard v. Wainwright</u>, 601 F.2d 807 (5 Cir. 1979). Both the factual substance of a claim and the federal constitutional issue itself must have been expressly presented to the state courts to achieve exhaustion for purposes of federal habeas corpus review. <u>Baldwin v. Reese</u>, 541 U.S. 27 (2004); <u>Gray v. Netherlands</u>, 518 U.S. 152 (1996); <u>Duncan v. Henry</u>, 513 U.S. 364 (1995); <u>Picard v. Connor</u>, 404 U.S. 270 (1971). These principles will be discussed when relevant in connection with the petitioner's individual claims *infra*.

<u>Facts Adduced At Trial</u>

For an appreciation of the issues involved in this proceeding, a full review of the facts adduced at trial is essential. The victim, S.A., a minor, testified that at the end of 2000 and beginning of 2001 she was 11 years old and living with her mother, grandmother, brother, and Aunt Wendy Payne. (T.196-199, 220).[4] During that time, the petitioner worked for Aunt Payne, fixing machines in her laundromat. (T.199-200). At one point, the petitioner was living with them for a couple of months, and at another point, he was living at the laundromat. (T.199-201). S.A.

---

[4]The letter "T" followed by a number in this Report refers to the trial transcripts which have been provided by the respondent and are attached to the appendix as exhibit A3. <u>See</u> DE#8:Ex.:A3.

would walk to the laudromat after school and stay there until it closed at 4:00 p.m. or 4:30 p.m. (T.201-202).

On February 6, 2001, when S.A. got to the laundromat, her aunt and the petitioner were there. (T.202). However, her aunt left shortly thereafter to make deliveries, but S.A. did not accompany her as she was waiting for a phone call. (T.203). Later, while S.A. was on the phone, the petitioner came up behind her and put his hand in her shirt and underneath her bra, touching her breasts. (T.204). S.A. also recalled that the petitioner's penis was hard as it touched her buttocks. (T.204-205). According to S.A., the touching lasted approximately five minutes. (T.205-206). Although S.A. felt sad, she did not say anything to the petitioner. (T.206).

When S.A. got off the phone, she went behind the store counter and was watching television and coloring when the petitioner again stepped beside her, and started touching her breasts and kissing her neck. (T.207-208). The petitioner then picked her up and carried her into the back of the laundromat, where he started to touch and tickle her stomach. (T.207-209). At that time, the next door shop owner walked into the front of the laundromat, looked at the petitioner, and then walked out. (T.211-213). In the meantime, S.A. told the petitioner that she was not going to "do that," got up and went to the front of the store. (T.209-210). The petitioner followed her again, and then began touching her face. (T.211-214).

S.A. also testified that on another occasion, she was home watching television when she fell asleep on the couch. (T.215-16). The petitioner, thinking S.A. was asleep, put his hand inside her pants, rubbing her vagina. (T.217-218). S.A. was awake and did not say anything to the petitioner or any family member about this incident. (T.219-220).

Bernadette Holton, the owner of Penny's Pet Pals, a business next to the laundromat, testified that she would see S.A. every day after school, because S.A. would walk her dogs. (T.277-278). Holton recalled one occasion when S.A. did not show up to walk the dogs, Holton went to the laundromat, at which time, she observed the petitioner's hands on S.A.'s belly button. (T.278-281). At that time, she asked S.A. to come next door because what she observed the petitioner doing "did not feel right." (T.281-82). The petitioner, however, told Holton that S.A. would not be going over. (T.282).

S.A.'s great aunt, Wendy Payne, testified that the petitioner did some work for her at home and at the laundromat. (T.302-306). In exchange, the petitioner would eat with them and began staying at the laundromat because he had no place to live. (T.306). Payne recalled that on the day of the incident, when Payne returned to the store, she observed the petitioner caressing S.A.'s face. (T.312). Payne got upset with the petitioner, and on the way home, asked S.A. about the incident. (T.312-313).

Thereafter, the police were called and now retired Detective Gary Baney responded. (T.371,375-379). Detective Baney took down answers to preliminary, background questions, took a statement from S.A. after telling S.A.'s mother and aunt to stop interceding because he only wanted to hear from S.A. (T.379-384).

<u>Discussion of the Claims</u>

Turning to the merits of the claims raised in the collateral proceeding, Section 104(d) of the AEDPA [28 U.S.C. §2254(d)] sets out a significant new restriction upon the ability of federal courts to grant habeas corpus relief. Under the AEDPA, the standard of review "is 'greatly circumscribed and highly deferential to the state courts.' <u>Crawford v. Head</u>, 311 F.3d 1288, 1295 (11th Cir.

2002)." See Stewart v. Sec. Dept. of Corrections, 476 F.3d 1193, 1208 (11ᵗʰ Cir. 2007). See also Parker v. Sec.Dept.of Corrections, 331 F.3d 764 (11ᵗʰ Cir. 2003). The AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). It is undisputed that the AEDPA applies in the instant case.

Where a petitioner's claim(s) raises a federal question,[5] that was exhausted, is not procedurally barred, and was adjudicated on the merits in the state courts, the federal court must afford a high level of deference to the state court's decision. See e.g., Ferguson v. Culliver, 527 F.3d 1144, 1146 (11 Cir. 2008).

Pursuant to 28 U.S.C. §2254(d), habeas relief is available only in cases where the claims were adjudicated on the merits and the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in state court." Crowe v. Hall, 490 F.3d 840, 844 (11ᵗʰ Cir. 2007), cert. den'd, ___ U.S. ___, 128 S.Ct. 2053 (2008); Williams  v. Taylor, 529 U.S. 362 (1999). Clearly established federal law embraces "the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision." Stewart v. Sec'y, Dep't of Corrs., 476 F.3d 1193, 1208 (11ᵗʰ Cir. 2007). Further, a decision is "contrary to" established law if (1) the state court arrived at an opposite conclusion on a question of law as interpreted by the Supreme Court or (2) the court arrived at a different result when

_____

[5]See 28 U.S.C. §2254(a)("a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States").

confronted with "materially indistinguishable" facts from relevant Supreme Court precedent. <u>Jennings v. McDonough</u>, 490 F.3d 1230, 1236 (11th Cir. 2007), <u>cert. den'd</u>, _____ U.S. ___, 122 S.Ct. 846 (2008). An application of established law is unreasonable "if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context." <u>Id</u>.

"[A] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" <u>Mitchell v. Esparza</u>, 540 U.S. 12, 16 (2003)(<u>quoting</u> <u>Early v. Packer</u>, 537 U.S. 3, 7-8 (2002). Even where a state court denies an application for post-conviction relief without written opinion, that decision constitutes an "adjudication on the merits," and is thus entitled to the same deference as if the state court had entered written findings to support its decision. <u>See</u> <u>Wright v. Sec. of Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11 Cir. 2002). Moreover, findings of fact by the state court are presumed correct, and the petitioner bears the burden of rebutting that presumption of correctness by clear and convincing evidence. <u>See</u> 28 U.S.C. §2254(e)(1); <u>Crowe v. Hall</u>, 490 F.3d at 844.

Regarding his ineffective assistance of counsel claims, those claims are subject to the two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1994), which is not a favorable standard to the movant. <u>See</u> <u>Massaro v. United States</u>, 538 U.S. 500, 505 (2003). To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards, and that he suffered prejudice as

a result.[6] <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Moreover, a habeas court's review of a claim under the Strickland standard is "doubly deferential." <u>Knowles v. Mirzayance</u>, ___ U.S. ___, 129 S.Ct. 1411, 1418, 173 L.Ed.2d 251 (2009). The relevant question "is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable-a substantially higher threshold." <u>Id</u>. (citations omitted). Finally, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." <u>Id</u>.

The two-prong <u>Strickland</u> test is equally applicable in assessing counsel's performance in appellate proceedings. <u>See</u> <u>Grubbs v. Singletary</u>, 120 F.3d 1174, 1176 (11 Cir. 1997)(applying the <u>Strickland</u> test to a claim of ineffective assistance of appellate counsel). <u>See also</u> <u>Matire v. Wainwright</u>, 811 F.2d 1430, 1435 (11 Cir. 1987). The Sixth Amendment does not require appellate attorneys to press every non-frivolous issue that the client requests to be raised on appeal, provided that counsel uses professional judgment in deciding not to raise those issues. <u>Jones v. Barnes</u>, 463 U.S. 745 (1983). In considering the reasonableness of an attorney's decision not to raise a particular claim, this Court must consider "all the

---

[6]When assessing a lawyer's performance, "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." <u>Chandler v. United States</u>, 218 F.3d 1305 (11 Cir. 2000)(en banc), <u>cert</u>. <u>denied</u>, 531 U.S. 1204 (2001). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within "the wide range of professionally competent assistance." <u>Van Poyck v. Florida Dept. of Corrections</u>, 290 F.3d 1318, 1322 (11 Cir.), <u>cert</u>. <u>denied</u>, 537 U.S. 812 (2002), <u>quoting</u>, <u>Strickland v. Washington</u>, 466 U.S. 668, 690. Review of counsel's conduct is to be highly deferential. <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. <u>White v. Singletary</u>, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11 Cir. 1992). A claim of ineffective assistance is a mixed question of law and fact. <u>Strickland</u>, 466 U.S. at 698.

circumstances, applying a heavy measure of deference to counsel's judgments." Eagle v. Linahan, 279 F.3d 926, 940 (11th Cir. 2001), quoting, Strickland, 466 U.S. at 691. Further, in determining whether the failure to raise a claim on appeal resulted in prejudice, the courts must review the merits of the omitted claim and, if it is concluded that the omitted claim would have had a reasonable probability of success, then counsel's performance was necessarily prejudicial because it affected the outcome of the appeal. Eagle, 279 F.3d at 943.

The Eleventh Circuit reviews an attorney's performance with deference, and looks not for "what is prudent or appropriate, but only what is constitutionally compelled." Hardwick v. Crosby, 320 F.3d 1127, 1161 (11 Cir. 2003), citing Chandler v. United States, 218 F.3d 1305, 1313 (11 Cir. 2000) (en banc)(When assessing a lawyer's performance, "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment."). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within the wide range of professionally competent assistance." Van Poyck v. Florida Dept. of Corrections, 290 F.3d 1318, 1322 (11 Cir.), cert. den'd,___ U.S. ___, 123 S.Ct. 70 (2002), quoting, Strickland v. Washington, supra at 690. Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992).

In **claim one**, the petitioner asserts that the erred in allowing the admission of irrelevant, highly inflammatory evidence to show bad character, contrary to Fla.Stat. §90.404 and federal law. (DE#1:6).

First, the respondent argues correctly that this claim is unexhausted and procedurally barred from review in this habeas proceeding. It is beyond dispute that before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies; 28 U.S.C. §2254(b)(1), thereby giving the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29-30 (2004)(citing Duncan v. Henry, 513 U.S. 364, 365 (1995)(per curiam)(quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). Further, to provide the state with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court thereby alerting that court to the federal nature of the claim. Baldwin, 541 U.S. at 29-30; Duncan, 513 U.S. at 365-366. See also O'Sullivan v. Boerckel, 526 U.S. 838 (1999). Thus, an applicant's federal writ of habeas corpus shall not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c). In Florida, exhaustion is ordinarily accomplished on direct appeal. If not, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial. Leonard v. Wainwright, 601 F.2d 807, 808 (5 Cir. 1979).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." Smith v. Jones, 256 F.3d 1135, 1138 (11 Cir. 2001). Pursuant to this doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable."

12

Id., *citing*, O'Sullivan, 526 U.S. at 845-46. Under the first exception, to establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11 Cir. 1999). See also Murray v. Carrier, 477 U.S. 478 (1986). To show prejudice, in essence, a petitioner must demonstrate that there is at least a reasonable probability that the outcome of the proceeding would have been different. See Crawford v. Head, 311 F.3d 1288, 1327-28 (11 Cir.2002). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has resulted in the conviction of someone who is actually innocent. See House v. Bell, 547 U.S. 518 (2006); Dretke v. Haley, 541 U.S. 386, 124 S.Ct. 1847 (2004). The actual innocence exception to the unreviewability of procedurally defaulted claims is applied only in the rarest of cases; see Dretke, 541 U.S. at 392-93.[7] See Bousley v. United States, 523 U.S. 614 (1998), *quoting*, Schlup v. Delo, 513 U.S. 298, 327-328 (1995).

The record shows that this claim was not raised in terms of a violation of federal constitutional principles before the Florida appellate court, and the Florida appellate court did not address it as such. See Initial Brief on Direct Appeal at 7-12. See also Wells v. State, 886 So.2d 240 (Fla. 4 DCA 2004). The petitioner cited no

---

[7]The Supreme Court has reiterated the standard to be applied to claims of actual innocence. See House v. Bell, 547 U.S. 518, 126 S.Ct. 2064, 2077 (2006)(citing Schlup v. Delo, 513 U.S. 298, 319-322, 324 (1995)). The Supreme Court noted that while the "standard is demanding and permits review only in the 'extraordinary' case", the *Schlup* standard does not require absolute certainty about the petitioner's guilt or innocence." Id. (citations omitted). Accordingly, "[a] petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt--or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." Id. In the habeas context, "actual innocence" means factual innocence, not mere legal insufficiency. Bousley v. U.S., 523 U.S. 614, 623 (1998). The petitioner must support the actual innocence claim "with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." Schlup, 513 U.S. at 324.

federal law or constitutional right that was violated by the state
trial court's alleged failure to admit the collateral crime
evidence. While the petitioner did present the state court with the
facts underlying any possible federal due process claims, his brief
on direct appeal fails to indicate that he was seeking relief under
any specific federal constitutional guarantee. That is fatal. See
Petrucelli v. Coombe, 735 F.2d 684, 687-688 (2 Cir. 1984)(holding
that to satisfy the exhaustion requirement, "a prisoner must have
fairly presented the same legal claim to the state courts that he
presents in his federal habeas petition. Because non-constitutional
claims are not cognizable in federal habeas corpus proceedings, a
habeas petition must put state courts on notice that they are to
decide federal constitutional claims ... a mere statement that due
process rights have been violated does not necessarily give rise to
a specific federal constitutional claim.")

     Based upon the well-settled principles regarding exhaustion,
claim one of this petition has not been properly exhausted. See
Baldwin, 541 U.S. at 30-2. See also Keller v. Larkins, 251 F.3d 408,
413-15 (3 Cir.)(holding that habeas petitioner's claim of violation
of federal due process in admission at murder trial of evidence of
his gang connections was unexhausted where petitioner argued in
state court that the admission of the evidence violated state
standards regarding proof of uncharged bad acts and that its
prejudicial impact outweighed its probative value, but neither the
federal Constitution nor any judicial decision based on the federal
Constitution was mentioned and passing references in state court to
the concept of a "fair trial" were insufficient to give the state
courts fair notice that petitioner was asserting a federal
constitutional claim), cert. denied, 534 U.S. 973 (2001).

     When a federal habeas petition raises a claim that has not been
exhausted in state proceedings, the district court ordinarily must

14

either dismiss the petition, "leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court," Kelley v. Secretary for Dept. of Corr., 377 F.3d 1317, 1351 (11 Cir. 2004)(internal quotation marks omitted), or grant a stay and abeyance to allow the petitioner to exhaust the unexhausted claim, see Rhines v. Weber, 544 U.S. 269, 277-79, 125 S.Ct. 1528, 1535-36, 161 L.Ed.2d 440 (2005). "[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, [the district court] can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." Kelley, 377 F.3d at 1351 (internal quotation marks omitted).

The petitioner's unexhausted claim is now incapable of exhaustion at the state level and would be procedurally barred under Florida law in any future attempt to exhaust.[8] Because claim one is now irrevocably barred from consideration by the state courts, this Court should treat the unexhausted claims as procedurally barred as well.[9] See Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11 Cir. 1999).

---

[8]The petitioner has already pursued a direct appeal and in Florida, issues which could be but are not raised on direct appeal may not be the subject of a later motion for postconviction relief pursuant to Fla.R.Crim.P. 3.850. Kennedy v. State, 547 F.2d 912 (Fla. 1989). Further, even if claim one were amenable to challenge pursuant to a Rule 3.850 motion, it cannot now be raised in a later Rule 3.850 motion because, except under limited circumstances not present here, Florida law bars successive Rule 3.850 motions. See Fla.R.Crim.P. 3.850(f). See also Moore v. State, 820 So.2d 199, 205 (Fla. 2002)(holding that a second or successive motion for postconviction relief can be denied on the ground that it is an abuse of process if there is no reason for failing to raise the issues in the previous motion). Also, any additional motion seeking relief under Rule 3.850 would likewise be successive and time barred in that it would be filed more than two years from the date the petitioner's judgment of conviction became final. See Fla.R.Cr. P. 3.850(b).

[9]A procedural-default bar in federal court can arise in two ways: (1) when a petitioner raises a claim in state court and the state court correctly applies a procedural default principle of state law; or (2) when the petitioner never raised the claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred in state court. Bailey v. Nagle, 172 F.3d 1299,

Since the petitioner has failed to demonstrate objective cause for the failure to properly raise the claim in the state courts and actual prejudice resulting from the errors complained of,[10] he cannot overcome the bar. See O'Sullivan v. Boerckel, 526 U.S. at 848-49; Coleman v. Thompson, 501 U.S. 722, 750-51 (1991); United States v. Frady, 456 U.S. 152, 168 (1982); Wainwright v. Sykes, 433 U.S. 72 (1977).

Moreover, application of the bar is appropriate in this case, because the petitioner has not established that a fundamental miscarriage of justice will result from application of the bar in that he has failed to meet the high standard of factual innocence.[11] See House v. Bell, 547 U.S. at 538 (holding actual innocence requires substantive review only in extraordinary cases). See also Dretke, 541 U.S. at 392-93.

Accordingly, the petitioner is not entitled to federal habeas corpus review on the merits of claim one. See O'Sullivan v. Boerckel, 526 U.S. at 848-49. See also Coleman v. Thompson, 501 U.S. at 750-51; United States v. Frady, 456 U.S. at 168; Wainwright v.

---

1302-03 (11 Cir. 1999). In the first instance, the federal court must determine whether the last state court rendering judgment clearly and expressly stated that its judgment rested on a procedural bar. In the second instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Id. at 1303. In Florida, a District Court of Appeal's per curiam affirmance of a circuit court's ruling explicitly based on procedural default "is a clear and express statement of its reliance on an independent and adequate state ground which bars consideration by the federal courts." Harmon v. Barton, 894 F.2d 1268, 1273 (11 Cir. 1990).

[10]To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11 Cir. 1999). See also Murray v. Carrier, 477 U.S. 478 (1986). To show prejudice, in essence, a petitioner must demonstrate that there is at least a reasonable probability that the outcome of the proceeding would have been different. See Crawford v. Head, 311 F.3d 1288, 1327-28 (11 Cir. 2002).

[11]In this federal proceeding, the petitioner has come forward with no new reliable evidence to support any claim of actual innocence. Further, the strong evidence admitted at trial, and reasonable inferences therefrom, demonstrate the petitioner's guilt of the offense with which he was convicted.

<u>Sykes</u>, 433 U.S. 72 (1977).

Notwithstanding, the claim is discussed briefly on the merits *infra*. The petitioner, however, is not entitled to federal habeas corpus relief on this claim because he cannot demonstrate that the admission of the subject evidence rendered his trial fundamentally unfair.[12] In this case, the state presented *Williams* Rule[13] evidence, over defense objection, from Bernadette Holton, who testified that when she was at her store working late into the night, and the petitioner was staying at the laundromat, her dogs would occasionally start barking, at which time she would step outside and find the petitioner standing in front of her picture window. (T.298-99). According to the petitioner, this testimony suggested that the petitioner was lurking in a lascivious manner at Holton or her employees, and thus was predisposed to commit a lewd molestation. (DE#8:Ex.:A5:7). However, the objected to testimony was permitted to enable Holton to explain why she did not like the petitioner and

---

[12]Federal courts will grant habeas corpus relief on the basis of a state evidentiary ruling only if the ruling adversely affects the fundamental fairness of the trial. <u>Sims v. Singletary</u>, 155 F.3d 1312 (11 Cir. 1998)(denying habeas corpus relief on a claim that a motion for mistrial was wrongfully denied). <u>See also</u> <u>Estelle v. McGuire</u>, 502 U.S. 62 (1991); <u>Osborne v. Wainwright</u>, 720 F.2d 1237, 1238 (11 Cir. 1983); <u>Jameson v. Wainwright</u>, 719 F.2d 1125 (11 Cir. 1983); <u>DeBenedictus v. Wainwright</u>, 674 F.2d 841, 843 (11 Cir. 1982). In general, federal courts are reluctant to second-guess state evidentiary rulings, recognizing that states deserve wide latitude in that area, <u>Maness v. Wainwright</u>, 512 F.2d 88, 92 (5 Cir. 1975), so federal habeas corpus relief is rarely deemed appropriate for claims predicated on allegations of state evidentiary error. <u>Boykins v. Wainwright</u>, 737 F.2d 1539, 1543-44 (11 Cir.), <u>cert. denied</u>, 470 U.S. 1059 (1985). Moreover, such evidentiary rulings are subject to the harmless error analysis and will support habeas relief only if the error "had substantial and injurious effect or influence in determining the jury's verdict." <u>Sims v. Singletary</u>, 155 F.3d at 1312, <u>quoting</u> <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993).

[13]The rule comes from <u>Williams v. State</u>, 110 So.2d 654 (Fla. 1959). Under the *Williams* rule evidence of other crimes, wrongs and acts is admissible if it is relevant to and probative of a material issue even though the evidence may indicate the accused has committed other uncharged crimes or may otherwise reflect adversely upon the accused's character. Section 90.404(2)(a), Florida Statutes, (1983), codifies the ruling in *Williams v. State* and lists the purposes for which such evidence is deemed to be admissible: proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. <u>Buenoano v. State</u>, 527 So.2d 194, 197 (Fla.1988), *cert. denied*, 523 U.S. 1043 (1998).

to correct any improper inference which may have been created by the defense.

The objected-to evidence was admissible under both applicable Florida and federal law principles.[14] See e.g., Fitzsimmons v. State, 935 So.2d 125, 128 (Fla. 2 DCA 2006)(noting that even if collateral crime evidence is inadmissible Williams rule evidence, collateral crime evidence may be admissible if it is inextricably intertwined with the crime charged); Henry v. State, 649 So.2d 1366 (Fla. 1994)(finding that evidence of collateral crime was "necessary to establish the context of events and to describe the investigation leading up to" the defendant's arrest and subsequent confession); Austin v. State, 500 So.2d 262, 265 (Fla. 1 DCA 1986)(holding that testimony given regarding circumstances immediately prior to arrest was so "inextricably intertwined" that an intelligent account of the criminal episode could not have been given without it).

It should further be noted that even if it was improper, it was admissible on redirect to explain or rebut the defense's cross-examination which attempted to establish that Holton disliked the petitioner. See Johnson v. State, 608 So.2d 4 (Fla. 1992). According to the respondent, the questioning was limited, but nevertheless proper, because the petitioner himself "opened the door" to this testimony during cross-examination. As an evidentiary principle, the concept of "opening the door" allows the admission of otherwise inadmissible testimony to "qualify, explain, or limit" testimony or evidence previously admitted. Tompkins v. State, 502 So.2d 415, 419 (Fla. 1986); see Huff v. State, 495 So.2d 145, 150 (Fla. 1986);

---

[14]Federal courts recognize the principle that evidence of other crimes, wrongs, or acts is not admissible to prove bad character. See Fed.R.Evid. 404(b). See also Britton v. Rogers, 631 F.2d 572 (8 Cir.), cert. denied, 451 U.S. 939 (1981). However, "other crimes" evidence may be admitted when offered for appropriate purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, or identity. Hall v. Wainwright, 733 F.2d 766 (11 Cir. 1984); Britton v. Rogers, supra at 575.

<u>Blair v. State</u>, 406 So.2d 1103, 1106 (Fla. 1981).

The concept of "opening the door" is "based on considerations of fairness and the truth-seeking function of a trial." <u>Bozeman v. State</u>, 698 So.2d 629, 631 (Fla. 4th DCA 1997). For example, in <u>McCrae v. State</u>, 395 So.2d 1145, 1151 (Fla.1980), defense counsel through his questions on direct examination "tactfully attempted to mislead the jury into believing that [the defendant's] prior felony was inconsequential." The <u>McCrae</u> court held that to negate the misleading impression given by defense counsel's question, the prosecutor was entitled to elicit the nature of the prior felony conviction on cross-examination. <u>See</u> <u>Id</u>. at 1152. Such was the case here.

It should further be noted that the state court's evidentiary ruling also forms no basis for federal habeas corpus relief. Federal courts will grant habeas corpus relief on the basis of a state evidentiary ruling only if the ruling adversely affects the fundamental fairness of the trial. <u>Sims v. Singletary</u>, 155 F.3d 1312 (11 Cir. 1998)(denying habeas corpus relief on a claim that a motion for mistrial was wrongfully denied). <u>See also</u> <u>Estelle v. McGuire</u>, 502 U.S. 62 (1991); <u>Osborne v. Wainwright</u>, 720 F.2d 1237, 1238 (11 Cir. 1983); <u>Jameson v. Wainwright</u>, 719 F.2d 1125 (11 Cir. 1983); <u>DeBenedictus v. Wainwright</u>, 674 F.2d 841, 843 (11 Cir. 1982). In general, federal courts are reluctant to second-guess state evidentiary rulings, recognizing that states deserve wide latitude in that area, <u>Maness v. Wainwright</u>, 512 F.2d 88, 92 (5 Cir. 1975), so federal habeas corpus relief is rarely deemed appropriate for claims predicated on allegations of state evidentiary error. <u>Boykins v. Wainwright</u>, 737 F.2d 1539, 1543-44 (11 Cir.), <u>cert. denied</u>, 470 U.S. 1059 (1985). Moreover, evidentiary rulings are subject to the harmless error analysis and will support habeas relief only if the error "had substantial and injurious effect or

influence in determining the jury's verdict." Id., quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (1993). In this case, there was no such error in the admission of the now challenged testimony. Even if there was error, such error did not have a substantial and injurious effect or influence on the verdict, especially given the other evidence adduced at trial to support the petitioner's conviction.

Under these circumstances, the state court's rejection of this claim on direct appeal was not in conflict with federal constitutional principles and should not be disturbed here. Williams v. Taylor, supra.

In **claim two**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer waived his speedy trial rights without the petitioner's consent. (DE#1:8). According to the petitioner, the two attorney's who represented him during the pretrial phase of his case were ineffective because each filed a demand for speedy trial, but then waived the right by seeking continuances of the trial. (Id.).

Nowhere in the United States Constitution is there found a right to be brought to trial within a certain number of days. Although there is a right to a "speedy" trial found in the Sixth Amendment, this right is "a more vague concept than other procedural rights." Barker v. Wingo, 407 U.S. 514, 521 (1972). The length of delay--acts as a triggering mechanism, because a defendant must first show that the length of delay was presumptively prejudicial. Doggett v. United States, 505 U.S. 647, 651-52 (1992). A one year period between accusation and trial has been recognized as the amount of time necessary to require a speedy trial analysis. Doggett, 505 U.S. at 652 n. 1 ("[T]he lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as

it approaches one year.... [I]t simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker enquiry."). See United States v. Register, 182 F.3d 820, 827 (11 Cir. 1999), cert. denied 530 U.S. 1250 (2000). Application of the factors set out in Barker v. Wingo, 407 U.S. 514 (1972), make it clear that the petitioner did not suffer a denial of his right to a speedy trial.[15]

In Florida, except under certain limited circumstances, every person charged by indictment or information with a crime that is a felony shall be brought to trial within 175 days. See Fla.R.Crim.P. 3.191(a). After the 175-day speedy trial time expires, a defendant has the right to file a Notice of Expiration of Speedy Trial (before referred to as a "motion for discharge"). At that point, the defendant is not eligible for that relief, but, instead he is entitled only to a trial within a fifteen-day recapture period, the right to which is triggered by the "notice of expiration of speedy trial time." See Fla.R.Crim.P. 3.191(g),(p). See also State v. Reaves, 609 So.2d 701 (Fla. 4 DCA 1992), review denied, 623 So.2d 494 (Fla. 1993). The speedy trial rule is, therefore, not "self-executing," and requires the defendant to take appropriate steps to trigger application of the rule. See State v. Gibson, 783 So. 2d 1155 (Fla. 5 DCA 2001). If a defendant remains silent, he is not entitled to a speedy discharge or even a speedy trial merely because the 175 day period expires without him having been tried. Id. See also Underwood v. State, 651 So. 2d 760 (Fla. 1st DCA 1995)(stating that the intent of Fla.R.Crim.P. 3.191(p)(3) is to provide prosecutor 15 days within which to bring defendant to trial from the date of the filing of the motion to discharge (now called

---

[15]Analysis of a claim asserting the denial of the constitutional right to a speedy trial is governed by Barker v. Wingo, 407 U.S. at 523. In Barker, the United States Supreme Court identified some of the factors to be considered in determining whether there had been a denial of a speedy trial: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id. at 530.

a notice of expiration of speedy trial)).

Some confusion in this area of the law has been created by the earlier Florida cases using the terms "motion for discharge" and "notice of expiration of speedy trial" synonymously although they are not the same. At the time of the instant proceedings and currently, a defendant seeking a speedy trial must first file a document expressly entitled "Notice of Expiration of Speedy Trial Time" once the 175-day period ends. See Fla.R.Crim.P. 3.191(p). See also State v. Gibson, 783 So. 2d 1155 (Fla. 5 DCA 2001)("a Motion for Discharge is not synonymous with a Notice of Expiration..."); Dabkowski v. State, 711 So. 2d 1219 (Fla. 5 DCA 1998)(similar). Only after the 15 day recapture period ends is the defendant entitled to file a "motion for discharge" requesting an immediate discharge. Id.

Further, the right to speedy trial can be waived by a defendant. Florida Rule of Criminal Procedure 3.191 does not require that the accused be present when a waiver of speedy trial is made, nor does it require that waiver be made personally by the accused. Thus, in Florida, a defense attorney may waive speedy trial on his client's behalf without consulting him, without his presence, and even against his wishes. Such a waiver is binding on the client. MacPhee v. State, 471 So.2d 670, 671 (Fla. 2 DCA 1985); State v. Abrams, 350 So.2d 1104, 1105 (Fla. 4 DCA 1977)(holding that the right to a speedy trial is waived when the defendant or his attorney request a continuance, and the acts of an attorney on behalf of a client will be binding on the client even though done without consulting him and even against the client's wishes).

The chronology of the events regarding the speedy trial issue as revealed by the record is as follows. Initially, the record reveals that the petitioner was appointed the public defender, who withdrew so that a special public defender could be appointed.

(DE#8:Ex.:A31). On November 15, 2001, Attorney Michael Gottlieb, a special public defender was appointed to represent the petitioner. (Id.). The petitioner was also granted a second public defender, Attorney Keith Seltzer on December 18, 2001. (Id.).

At the August 22, 2001, at the calendar call, defense counsel filed a motion to continue which was granted by the court. (DE#8:Ex.:A30). Trial proceedings were scheduled for November 30, 2001, but defense counsel filed another continuance, which was granted and the case set over until January 25, 2002. (Id.). The case progressed, numerous defense and prosecution continuances were granted, until the trial finally started on March 24, 2003.[16]

When the identical claim was raised in the petitioner's Rule 3.850 proceeding, the trial court denied the claim, finding in it both without merit and procedurally barred. (DE#8:Ex.:A23). That decision was *per curiam* affirmed without published opinion by the appellate court. Wells v. State, 988 So.2d 634 (Fla. 4 DCA 2008); (DE#8:Ex.:A26).

Thus, the record indicates that at least part of the delay was chargeable to the petitioner in that his counsel sought and received numerous continuances of the trial proceedings. It is clear that counsel was actively pursuing a defense and preparing for trial, by

---

[16]Such a strategic decision, which clearly was made in order to better prepare for trial, should not be second-guessed in this collateral proceeding. Scrutiny of an attorney's performance is highly deferential, therefore, reviewing courts will not second-guess strategic decisions; rather, the attorney's performance is evaluated in light of all the circumstances as they existed at the time of the conduct, and is presumed to have been adequate. Strickland v. Washington, 466 U.S. 668, 689-90 (1984). Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. Id. at 690-91. Even if in retrospect the strategy to pursue one line of defense over another appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it. Adams v. Wainwright, 709 F.2d 1443, 1145 (11 Cir. 1983). Accordingly, tactical or strategic choices by counsel cannot support a collateral claim of ineffective assistance. United States v. Costa, 691 F.2d 1358 (11 Cir. 1982); Coco v. United States, 569 F.2d 367 (5 Cir. 1978).

deposing witnesses, and conducting investigation. No showing has
been made that counsel was ineffective for seeking continuances or
for failing to go forward on the demand for a speedy trial. Cf.
Strickland, supra; see also, State v. Guzman, 697 So.2d 1263, 1264
(Fla. 3 DCA 1997)(a successful defense motion for continuance waives
the right to discharge under the speedy trial rule).

Even if there was deficient performance in this regard, no
prejudice pursuant to Strickland has been established. Contrary to
the petitioner's allegation here, the defense continuances did not
allow the prosecution to "build" its case by giving them additional
time to secure witnesses. The prosecution witnesses, which included
the minor victim, her great aunt, the shop owner next to the
laundromat, and the investigating officers, were all known to the
prosecution and interviewed early on in its investigation. The delay
did not in any way prejudice the petitioner's ability to defend the
charges against him. To the contrary, such delays may have been
tactically sought in the hopes that prosecution witnesses relocate
and their memories fade, and that any other evidence implicating the
petitioner grows stale or disappears. Thus, no constitutional
violation has occurred. Under these circumstances, the rejection of
the claim in the state forum was not in conflict with clearly
established federal law or based on an unreasonable determination
of the facts in light of the evidence presented in the state court
proceeding. Relief must therefore be denied pursuant to 28 U.S.C.
§2254(d). Williams v. Taylor, 529 U.S. 362 (2000).

Alternatively, the respondent argues correctly that this claim
is expressly procedurally barred from review in this habeas
proceeding because the state courts applied a procedural bar. In
Florida, issues which could be but are not raised on direct appeal
may not be the subject of a subsequent Rule 3.850 motion for
postconviction relief. Kennedy v. State, 547 F.2d 912 (Fla. 1989).

A claim that the petitioner's speedy trial rights were violated is properly raised on direct appeal, rather than in postconviction collateral proceedings. See Asay v. State, 769 So.2d 974, 979 (Fla. 2000)(holding that claim of actual bias by trial court was procedurally barred from postconviction review because the grounds upon which the claim was based were known at the time of the direct appeal).

Although claims of ineffective assistance of trial counsel generally are appropriately raised in Florida by way of a motion for post conviction relief pursuant to Fla.R.Crim.P. 3.850, McClain v. State, 629 So.2d 320 (Fla. 1 DCA 1993); Loren v. State, 601 So.2d 271 (Fla. 1 DCA 1992), the courts of Florida decline to address such claims in postconviction proceedings where they are brought in an attempt to circumvent a procedural bar applicable to the underlying substantive claim. Medina v. State, 573 So.2d 293 (Fla. 1990). The state courts hold that proceedings under Rule 3.850 are not to be used as a second appeal, and it is inappropriate to use a different argument to relitigate the same issue. Id. at 295 and cases cited therein. Accordingly, the Florida courts have specifically held that allegations of ineffective assistance of counsel cannot be used to bypass the rule that postconviction proceedings cannot serve as a second appeal. Id.

In the Rule 3.850 proceedings in this case, the trial court denied relief, expressly stating that the claim was procedurally barred from federal habeas corpus review because the substantive underlying claim was one that should have been raised on direct appeal. (DE#8:Ex.:A23-Order Denying Defendant's Motion for Post Conviction Relief). As indicated above, the appellate court affirmed the denial as to this issue. See Wells v. State, 988 So.2d 634 (Fla. 4 DCA 2008). Therefore, this claim was, therefore, defaulted when it was not raised, as it could have been, on direct appeal. See

<u>Caniff v. Moore</u>, 269 F.3d 1245, 1246-47 (11 Cir. 2001)(holding that under Florida law, issues that could have been raised on direct appeal but were not are noncognizable claims through collateral attack and therefore are procedurally barred from review in a state post-conviction proceeding). As the claim  was procedurally barred from consideration in state court, it is procedurally barred from consideration in this federal petition as well unless the petitioner can demonstrate objective cause for the failure to properly raise the claim on direct appeal and actual prejudice resulting from the error complained of. <u>See</u> <u>United States v. Frady</u>, 456 U.S. 152, 168 (1982); <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977). No such showing has been made here. Consequently, this claim is also not entitled to habeas relief in this proceeding because it was expressly barred in the state courts, and that bar should thus be applied here.

In **claim three**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to challenge the competency of the minor victim to testify at trial. (DE#1:9). According to the petitioner, counsel was aware that the minor victim had a low I.Q., and was possibly coached by her mother and great aunt.

The Rule 3.850 court denied this claim without a hearing. (DE#8:Ex.:A23). The court, adopting the state's response to the Rule 3.850 motion, noted the claim was "refuted by the record, procedurally barred, and legally insufficient as mere speculation." (<u>Id</u>.). Review of the record reveals that the minor was thirteen years old at the time of her testimony. (T.221-233). She knew her address, the prior residences where she had lived, and the like. (T.221-239). When asked if she recalled telling anyone that she "pushed" the petitioner off of her when she was in the back of the laundromat, the petitioner testified that she could not recall. (T.260-262). However, when she reviewed her statement to police, she

26

acknowledged telling police that she had, in fact, indicated that she pushed the petitioner away so that she could get up and go to the front of the store. (Id.). Notwithstanding, from a review of S.A.'s testimony in its entirety, it is evident that the minor child had sufficient maturity, memory, vocabulary, and intelligence to understand right from wrong and to recollect the events of which he might be questioned. Her testimony regarding the events at the laundromat was also corroborated by Bernadette Jennis Penny Holton, the shop owner next to the laundromat and the aunt who witnessed the petitioner touching the minor child. (T.277).

Section 90.605(2), Florida Statutes, provides that, as a matter of trial court discretion, "a child may testify without taking the oath if the court determines the child understands the duty to tell the truth or the duty not to lie." The competence of a child witness is based on intelligence, not age, and whether the child possesses a sense of the obligation to tell the truth. Bennett v. State, 971 So.2d 196, 201 (Fla. 1DCA 2007)(citing, Lloyd v. State, 524 So.2d 396, 400 (Fla. 1988). In determining whether a child is competent to testify, "the trial court should consider (1) whether the child is capable of observing and recollecting facts, (2) whether the child is capable of narrating those facts to the court or to a jury, and (3) whether the child has a moral sense of the obligation to tell the truth." Griffin v. State, 526 So.2d 752, 753 (Fla. 1st DCA 1988) (citing Lloyd v. State, 524 So.2d 396, 400 (Fla. 1988)); see also Z.P. v. State, 651 So.2d 213, 213-14 (Fla. 2d DCA 1995)("When a child's competency is at issue, the court must determine whether the child is capable of observing, recollecting, and narrating facts in addition to whether the child has a moral sense of the duty to tell the truth."). Factors to consider in reviewing the trial court's decision on a child's competency to testify include the entire context of her testimony and whether her testimony is corroborated by other evidence. See Lloyd, 524 So.2d at 400 (noting

that most of the critical facts supplied by the child's testimony were either unrefuted or corroborated by other witnesses).

In this case, it is evident that the child demonstrated her intelligence, accurately recounting facts regarding where and with whom she had lived. More importantly, the child was able to narrate the events at they transpired at the laundromat which were, in fact, also corroborated by Holton. Likewise, Detective Gary Lester Baney testified that he was able to obtain the child's statement without coaching from the mother or aunt. (T.379-384). Under these circumstances, neither attorney error nor prejudice to the outcome has been shown arising from counsel's failure to impeach or otherwise challenge the competency of the chid. Even if counsel had attempted to do so, no showing has been made in the state forum nor in this habeas proceeding that such a request would have been granted. To the contrary, it is evident that the child was competent to testify, irrespective of whether or not she had a high I.Q.[17] Thus, the petitioner's allegations to the contrary are pure speculation and unsupported by the record.[18] Therefore, the trial court's disposition of this claim has not resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law. See Williams v. Taylor, supra.

In **claim four**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to call an eye witness, identified by the petitioner as "Howard," to refute the

---

[17]To the extent the petitioner asserts here for the first time that counsel was aware of the child's incompetency as early on as at the time of the probable cause hearing, petitioner's allegation is conclusory and without any substantiation in the record. Therefore, it is subject to summary dismissal. Machibroda v. United States, 368 U.S. 487 (1962).

[18]It should also be noted that during the child's deposition, she was able to respond that she understood a lie from the truth, right from wrong, and the like. (DE#8:Ex.:A24:Deposition of S.A.-Attached as Exhibit to Petitioner's Reply). Nowhere during her deposition was S.A. unable to answer the questions nor was any issue regarding her competency evident. (Id.).

testimony of the prosecution's witness, Wendy Payne. (DE#1:11). According to the petitioner, Howard would have testified that during the time the child's aunt left the laundromat to make deliveries, Howard was present at the store and talking with the petitioner about fixing the transmission of his car. (DE#8:Ex.21:30). The petitioner claims Howard would have testified that nothing inappropriate occurred between the petitioner and the victim. (Id.).

The petitioner has provided no affidavit in the state forum, nor in this habeas proceeding, to establish that the individual solely identified as "Howard" would have testified as proffered nor that he would have been available to testify at trial. Such a bare and conclusory allegation, bereft of record support, is subject to summary dismissal. Machibroda v. United States, 368 U.S. 487 (1962). Moreover, the petitioner's proffered testimony does not alter the outcome of the proceedings, given the evidence adduced at trial. See Fugate v. Head, 261 F.3d 1206, 1239, n.54 (11th Cir. 2001)(fact that other witnesses could have been called proves only that short-comings of trial counsel can be identified, while shortcomings can be identified, perfection is not the standard of effective assistance). The claim was rejected by the trial court on the bases that it was without merit and legally insufficient. (DE#8:Ex.:A23).

Moreover, it should be noted that Holton, who walked by the laundromat at the time in question, did not observe any other individuals in the store. The victim also never indicated that there was a third person in the store. When the victim's aunt returned to the store, the only people there were the petitioner and her niece. Therefore, counsel's tactical or strategic choice not to call this unidentified witness cannot support a collateral claim of ineffective assistance. Dorsey v. Chapman, 262 F.3d 1181, 1186 (11th Cir. 2001); United States v. Guerra 628 F.2d 410, 431 (5th Cir. 1980); United States v. Costa, 691 F.2d 1358 (11 Cir. 1982); Coco

29

<u>v. United States</u>, 569 F.2d 367 (5 Cir. 1978). Decisions whether to call particular witnesses generally are questions of trial strategy. <u>United States v. Costa</u>, <u>supra</u>.

Under the circumstances present here, no showing has been made in this federal proceeding that counsel was deficient or that the petitioner was prejudiced arising from counsel's failure to call the detective as a defense witness at trial. <u>See</u> <u>Strickland v. Washington</u>, <u>supra</u>. The state court's denial of this claim thus was in accordance with applicable federal authorities, and habeas corpus relief is not warranted. <u>Williams v. Taylor</u>, <u>supra</u>.

In **claim five**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to properly impeach the prosecution's witness, Wendy Payne, with her motive and interest for providing untruthful testimony. (DE#1:12A). According to the petitioner, Payne owed the petitioner $800.00 for work done at the laundromat, and presumably wanted the petitioner to go to jail so that she would not have to repay the debt. (<u>Id</u>.). The petitioner concludes that Payne coerced the victim to testify against the petitioner. (<u>Id</u>.).

At trial, Payne testified that, in exchange for worked done at the laundromat, the petitioner lived at her apartment and ate with him, as he was homeless. (T.306-311). There is nothing of record to suggest that the aunt coached or otherwise coerced the child victim to testify against the petitioner. Payne testified at trial and was subject to vigorous cross-examination by defense counsel regarding her motive for testifying and the work performed by the petitioner at the laundromat. (T.336-344).

Moreover, even if counsel had specifically questioned Payne regarding the alleged $800.00 debt, no showing has been made in the

state forum nor in this habeas proceeding that the outcome of the guilt phase portion of the petitioner's trial would have been different. Under these circumstances, the movant has failed to establish prejudice pursuant to <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) arising from counsel's failure to further cross-examine or otherwise impeach Payne with this information. Consequently, the state courts' rejection of the claim was not in conflict with federal constitutional principles and should not be disturbed here. <u>Williams v. Taylor</u>, <u>supra</u>.

In conclusion, it is clear from the record when viewed as a whole that the petitioner received able representation more than adequate under the Sixth Amendment standard. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

Lastly, to the extent the petitioner appears to argue that he is entitled to a federal evidentiary hearing on his claims, that claim also warrants no habeas corpus relief here. If a habeas corpus petitioner "alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of the claim." <u>Holmes v. United States</u>, 876 F.2d 1545, 1552 (11 Cir. 1989), <u>quoting</u> <u>Slicker v. Wainwright</u>, 809 F.2d 768, 770 (11 Cir. 1987). However, no hearing is required where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous. <u>Holmes</u>, <u>supra</u> at 1553. Here, for the reasons which have been discussed, the petitioner's claims are all affirmatively contradicted by the existing record, so no federal hearing is necessary or warranted.

<u>Conclusion</u>

For the foregoing reasons, it is recommended that this petition for habeas corpus relief be denied.

31

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 20th day of July, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  James Wells, Pro Se
     DC#966175
     DeSoto Correctional Institution
     13617 S.E. Highway 70
     Arcadia, FL 34266-7800

     Diane F. Medley, Ass't Atty Gen'l
     Office of the Attorney General
     1515 North Flagler Drive, #900
     West Palm Beach, FL 33401-3428